1810.

*Philadelphia,*
*Saturday,*
January 6.

The Commonwealth *against* CARMALT.

THE defendant was indicted in the Quarter Sessions of *Montgomery*, for having, by colour of being gatekeeper of the Chesnut-Hill and Springhouse Turnpike Company, unlawfully demanded and received of one *Aaron Keyser*, the sum of four cents, for opening the gate of the said company, and permitting him to pass with a sled and two horses.

Upon the trial of the indictment before the Chief Justice on the *Montgomery* Circuit in *June* 1808, the jury found a special verdict to the following effect: That *Keyser* resided in *Flour-town* on the Chesnut-Hill and Springhouse Turnpike Road, and had *there* six acres of ground which he farmed; that he had another lot of ten acres *at the distance of a quarter of a mile from his residence*, and about sixty rods from the turnpike road, which he also farmed, on which there was no building but a hay barrack, and to which he could not go but by the turnpike, and through the gate kept by the defendant. That the toll stated in the indictment, was taken for passing through the said gate twice or oftener from one of the said lots to the other, and that permission to pass was refused until the toll was paid. That the Chesnut-Hill and Springhouse Turnpike Company had taken the benefits of the act passed the 17th *March* 1806, entitled &c., and had acceded to the terms of the said act. [By which, under the proviso to the first section, 7 *St. Laws* 528, they relinquished " *their right of taking tolls from any person, when passing* "*from one part of his or her farm to the other, along the said* " *road.*"] That the said two separate lots *were occupied* by the said *Aaron Keyser as one farm*, and were so occupied at the time the toll was taken. But whether on the whole matter &c.

It was agreed by counsel, that the questions arising upon the special verdict should be argued in bank, and that judgment should be entered in the Circuit Court, according to the opinion of this court.

*Hemphill* for the commonwealth, stated the question to be, whether *Keyser* at the time the toll was exacted, was passing

*[margin note:]* Two detached pieces of land occupied as one farm, are within the meaning of the first section of the act of 17th *March* 1806, which prohibits certain turnpike companies from taking tolls from any person when passing from "one part of his "farm to the "other" along the turnpike road.

from one part of his farm to the other; and he insisted, that after the finding of the jury, that the two lots were occupied as one farm, the defendant had no course left but to deny the possibility of two detached pieces of land being parts of one farm; a position equally irreconcileable with the meaning of the word, and the intention of the legislature. The strictest technical signification of "*farm*," is comprehensive enough to embrace distinct parcels of land. " The lessee" says *Plowden*, " may be called the farmer of every thing that he has " on lease; and that which he holds may as to him be called " his farm." *Wrotesly* v. *Adams* (*a*): *Jacob.* " *Farm.*" This is also the popular meaning. A farm in common acceptation consists of a variety of objects, as a messuage, orchard, meadow, woodland, arable and the like, to which contiguity is in no degree essential. If a farmer were to sell the middle field of three which were contiguous to each other, would the exterior fields cease to be parts of the same farm? But the legislature intended the exemption from toll for such a case as *Keyser's*, as much as for any other. The act of 1806 was designed to confer upon certain companies the privileges of the Lancaster Turnpike, and to make them subject to the like disabilities. Now, by the act of 17th *April* 1795, 3 *St. Laws* 751, the Lancaster Turnpike Company are prohibited from taking toll of persons living on or adjacent to the road, who may have occasion to pass on the ordinary business of their farms, and have no other convenient road; and the last act should therefore have a liberal construction, to make it correspond with the first. It is well known that almost all the inhabitants of villages on the turnpikes have what are called outlots, which they farm; and it may be presumed that the principal intent of the provision, was to exempt these people from the vexation and expense of repeated tolls.

*T. Ross* for the defendant answered, that the finding of the jury was not so conclusive as was supposed; for they had not found that the two lots were parts of one farm, but that they were occupied *as* one farm, which was a very different thing. A man might purchase a piece of land at one end of a turnpike, and occupy it as one farm with a piece at the other

(*a*) 1 *Plowd.* 195.

end, and thus travel toll-free the whole extent. They must not only be occupied as, but in fact be, one farm, to come within the law. The questions then are, whether two lots, situated according to the verdict, are one farm, within the legal meaning of the word, and the intention of the legislature. What may be its meaning in relation to the lessee, is one thing; it may, according to the quotation from *Plowden*, comprehend every thing he leases, however disjointed; but this comprehensive meaning is given to it, only in the case of a lessee, which *Keyser* does not appear to have been. 1 *Cruise* 244. 3 *Cruise* 307. When the thing is spoken of *per se*, *Plowden* says, it is a collective word, consisting of divers things *gathered in one*, as a messuage, lands &c.; that is, as I understand it, lying in contiguity. If *Keyser* had devised his farm in *Flourtown*, is it supposed that the other lot would have passed? The legislature could not have intended an exemption in the present case, because it would lead to perpetual frauds upon the company. Their object was solely to prevent the arbitrary erection of gates, from becoming a restraint upon free access to every part of the same body of lands; and it might be supposed, from the ordinary size of farms, that it would be no great injury to the company. But if lots separated from each other a mile, are one farm, so they may be if separated ten; and then the landholder has a most unreasonable privilege, at a great expense to the company. The act of 1795 is out of the question. The case turns exclusively upon the terms in the act of 1806.

TILGHMAN C. J. By the act of the 17th *March* 1806, certain privileges were given to the Chesnut-Hill and Springhouse Turnpike Company, provided that they should not have the benefit of that act, unless they relinquished their right of taking tolls from any person, " when passing from " one part of his or her farm to the other along the said " road." After the company had accepted the benefit of this act, the defendant took the toll for which he was indicted. It is now made a question whether upon the finding of the jury, *Keyser* was passing from one part of his farm to the other.

The defendant's counsel have endeavoured to shew, that *Keyser* had two separate farms, and was passing from one

1810.

COMMON-
WEALTH
*v.*
CARMALT.

of them to the other. In order to support this position, it must be shewn, that it is impossible for two parcels of land, not contiguous, to be parts of one farm; for the jury have expressly found that they were occupied as *one farm.* Books have been cited to shew the meaning of the word *farm.* It does not appear that the *English* affix a meaning to that word different from our idea of it. But if they did, it would signify nothing. We must understand it as it is generally understood in *Pennsylvania.* By a farm we mean an indefinite quantity of land, some of which is cultivated. Most farms contain parcels of land applied to different purposes. Some are used for the cultivation of grass, some of grain, and some remain in wood. It is very common for the proprietors of farms to have a piece of wood land, not contiguous to the place of their residence, but appurtenant to it. I can see no reason why those different parcels of land should not be reckoned as one farm; nor has any authority been cited to the contrary. Suppose a man to have a farm consisting of three fields lying on the turnpike road, and to sell the middle field, so that the two remaining ones shall not be contiguous. Do they therefore cease to be one farm? I am satisfied that there are many cases where a farm consists of detached parcels of land, and that farms of this kind are within the words and meaning of the act of assembly. The jury then having found that these different parcels were *occupied as one farm,* which was a matter of fact, proper for them to decide, I am clearly of opinion that the taking of toll was illegal, and that judgment should be entered for the commonwealth.

YEATES J. gave no opinion, not having been present at the argument.

BRACKENRIDGE J. concurred with the Chief Justice.

Judgment for the commonwealth.